UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RANDY J. WRIGHT,

                      Plaintiff,

-against-                                      3:06-CV-394
                                                                      (LEK/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

## DECISION AND ORDER

**I.**    **BACKGROUND**

    **A.**    **Procedural History**

An application for Supplemental Security Income ("SSI") was filed on behalf of Plaintiff Randy J. Wright ("Plaintiff") on April 13, 1984. Administrative Transcript ("AT") 13; see AT 94. The application was denied. See id. A second application for SSI was filed on behalf of Plaintiff on February 13, 1985. AT 82-91, 154-59. On March 29, 1985, Plaintiff was found to be disabled based on the second application and awarded benefits beginning February 13, 1985. AT 92. Thereafter, Plaintiff became a member of the class action Sullivan v. Zebley, 493 U.S. 521 (1990), which eventually resulted in a finding of disability on September 28, 1994 and an award of benefits commencing April 13, 1984. AT 13, 93-101. The basis for disability were diagnoses of mild mental retardation and adjustment disorder with anxious and depressed mood. AT 92, 94-95.

On May 13, 2002, Plaintiff's case was reviewed as part of a Continuing Disability Review. AT 102-103. Plaintiff failed to attend consultative examinations in September and October of 2002. AT 109-10, 113. Citing a medical improvement in Plaintiff's condition and Plaintiff's failure to cooperate, a finding was made that Plaintiff's disability ceased on November 12, 2002. AT 121-22.

Plaintiff requested reconsideration of the cessation determination. AT 129-30. Plaintiff was

notified that a hearing would be held before a Disability Hearing Officer. AT 131-33. In the interim, Plaintiff attended two consultative examinations on April 30, 2003. AT 136, 304-15. The hearing before the hearing officer was held on July 15, 2003. AT 140, 202-09. On July 25, 2003, the hearing officer issued a decision finding that Plaintiff's condition improved and that Plaintiff is no longer disabled. AT 140-50.

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). AT 151-52. The hearing was rescheduled on several occasions. AT 28-41. On April 20, 2005, a hearing was held before ALJ Barry E. Ryan. AT 42-81. On June 21, 2005, the ALJ issued a decision affirming the cessation determination. AT 13-23. The Appeals Council denied Plaintiff's request for review on January 27, 2006. AT 5-8. Plaintiff commenced this action on March 28, 2006 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Dkt. No. 1.

**B.   Contentions**

Plaintiff makes the following claims:

(1) The ALJ's selective use of medical reports is contrary to law. Dkt. No. 10 at 16-19.

(2) Plaintiff's uncooperativeness corroborated the doctors' opinions that his mental illness was severe and required a vocational expert opinion rather than the Medical-Vocational Guidelines used by the ALJ. Dkt. No. 10 at 19-21.

(3) There was no substantial evidence of medical improvement and the ability to work. Dkt. No. 10 at 21-22.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed. Dkt. No. 11.

**C.   Facts**

Evidence prior to September 28, 1994, the date of the earlier agency determination finding

that Plaintiff was disabled,[1] reveals that Plaintiff's IQ was tested on March 2, 1984.  AT 161.  Plaintiff achieved a verbal IQ score of sixty-two, a performance IQ score of seventy-one, and a full scale IQ score of sixty-four.  AT 161.  Plaintiff was classified as "mentally handicapped" and placed in special education classes and a work study program.  AT 164.  However, Plaintiff reportedly performed poorly in the "BOCES program" and had a poor attitude, put forth minimal effort, and showed an inability to get along well with others.  Id.

On February 15, 1985, Plaintiff was treated at United Health Services/Binghamton General Hospital because he made a "suicidal gesture."  AT 228.  The primary diagnosis was attention-deficit disorder without hyperactivity, residual type.  AT 226.  The secondary diagnosis was adjustment disorder with an anxious and depressed mood.  Id.

On March 19, 1985, Plaintiff was examined by George Primanis, M.D.  AT 231-32.  Dr. Primanis noted that Plaintiff's intelligence was below normal; attention span and concentration were diminished; and insight and judgment were limited.  AT 231.  Dr. Primanis diagnosed Plaintiff as suffering from mild mental retardation and "schizoid [personality disorder]."  AT 232.

Evidence following the CPD shows that Plaintiff received treatment at various emergency rooms for a dog bite to the left arm (June 22, 2002); asthma (September 17, 2002, April 20, 2003 & June 18, 2003); an injury to his chest (September 26, 2002); left thumb pain (December 27, 2002); shortness of breath (January 14, 2003); and migraine headaches and chest pain (May 30, 2003 & June 11, 2003).  AT 233-54, 278-83, 297-303, 340-400.  A chest x-ray performed on June 19, 2003 showed atelectasis.  AT 396.

From November 15, 2002 to July 24, 2003, Plaintiff treated at United Medical Associates.  AT 255-63, 293-96.  Plaintiff was treated for bronchitis, asthma, migraine headaches, knee pain, and

---

[1] The ALJ refers to this date as the comparison point decision ("CPD").  AT 15.

3

chest pain. Id. Plaintiff was prescribed various medications, as well as a walking cane for his knee pain and instability. Id.

On April 30, 2003, Plaintiff underwent a psychiatric examination at the request of the agency by Dennis M. Noia, Ph. D. AT 304-07. Dr. Noia noted that Plaintiff reported no history of psychiatric hospitalizations nor psychiatric treatment. AT 304. Dr. Noia found that Plaintiff's intellectual functioning is in the low average range. AT 306. Dr. Noia found that Plaintiff appears to be capable of the following: following, understanding, and remembering simple instructions and directions; performing simple and some complex tasks with supervision and independently; maintaining attention and concentration for tasks; regularly attending to a routine; maintaining a schedule; making appropriate decisions; learning new tasks; relating to and interacting appropriately with others; and dealing with stress. AT 307. Dr. Noia found that the results of the examination do not appear to be consistent with any psychiatric problems that would significantly interfere with Plaintiff's ability to function on a daily basis. Id. Dr. Noia also found that a reading disorder should be ruled out. Id.

On April 30, 2003, Plaintiff also underwent an internal medicine examination at the request of the agency by Kalyani Ganesh, M.D. AT 308-15. Dr. Ganesh diagnosed Plaintiff as suffering from asthma, a history of upper back surgery, migraine headaches, and a learning problem. AT 311. Dr. Ganesh found no gross physical limitation for sitting, standing, walking, climbing, or the use of upper extremities. Id. Spirometry test results were normal. AT 312.

The record contains a Psychiatric Review Technique form completed by M. Apacible, M.D., a State agency review physician, on May 13, 2003. AT 316-29. Dr. Apacible rated Plaintiff's functional limitations under Listing 12.02 (Organic Mental Disorders), finding that Plaintiff has a mild restriction of activities of daily living; mild difficulties in maintaining social functioning;

moderate deficiencies in maintaining concentration, persistence or pace; and no repeated episodes of deterioration.  AT 326.

Dr. Apacible also completed a Mental RFC assessment.  AT 336-39.  Dr. Apacible found that Plaintiff is limited moderately in the following abilities: understand and remember detailed instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; and set realistic goals or make plans independently of others.  AT 336-37.

On October 5, 2004, Cynthia Richards, Plaintiff's disability advocate, referred Plaintiff to Randy Specterman, Ph. D. for psychodiagnostic testing.  AT 426-31.  Testing showed that Plaintiff's verbal IQ score was seventy-one; performance IQ score was seventy-nine; and full scale IQ score was seventy-four.  AT 428.  Dr. Specterman opined that Plaintiff is functioning well below normal in all domains of intellectual functioning; is in the borderline range of intellectual functioning; and is reading below the third-grade level.  AT 428-29, 431.  He noted that Plaintiff suffers from depression and anxiety.  AT 431.  Dr. Specterman diagnosed Plaintiff as suffering from bipolar disorder.  Id.  He assigned Plaintiff a score of fifty on the Global Assessment of Functioning scale.[2]  Id.

Dr. Specterman completed a Medical Source Statement on October 28, 2004.  AT 432-33.  He indicated that Plaintiff has a slight restriction in his abilities to understand and remember detailed instructions; moderate limitations in carrying out detailed instructions and making judgments on simple work-related decisions; and marked limitations in interacting appropriately with the public, supervisor(s), and co-workers; responding appropriately to work pressures in a

---

[2]A GAF score between forty-one and fifty indicates the presence of serious symptoms or a serious impairment in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) ("DSM-IV-TR").

usual work setting; and responding appropriately to changes in a routine work setting.  Id.

The record contains a letter dated January 18, 2005 to Plaintiff's disability advocate from Paul Tegtmeyer, Ph. D., a psychologist at Chenango County Community Mental Hygiene Services. AT 441-42.  Dr. Tegtmeyer noted that he reviewed Dr. Specterman's evaluation and opined that Plaintiff "is clearly an impaired individual who would be unlikely to maintain competitive employment."  AT 441.  Dr. Tegtmeyer diagnosed Plaintiff as suffering from dysthymia; a reading disorder; borderline intellectual functioning; and personality disorder, not otherwise specified with borderline features.  Id.  He noted that post-traumatic stress disorder should be ruled out.  Id.  On June 24, 2005, Dr. Tegtmeyer clarified that his impression was based on his personal evaluation of Plaintiff on September 24, 2004.  AT 455.

The record also contains an undated, unsigned Physical RFC assessment.  AT 330-35.  The assessment indicates that Plaintiff has no exertional, postural, manipulative, visual, and communicative limitations, but has some environmental limitations due to Plaintiff's history of asthma.  Id.

## II. DISCUSSION

### A. Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

6

> immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

### B.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

  **C.** **Termination of Benefits**

In a case such as this, where a finding of disability has resulted in the granting of benefits under the Act, the Commissioner is statutorily charged with the duty to engage in a continuing, periodic review of the claimant's condition. 42 U.S.C. § 421(i); see also 42 U.S.C. § 425(a). If, based upon that review, the Commissioner determines that the disabling condition has subsided,

does not exist, or is not disabling, a termination of benefits may be ordered. 42 U.S.C. § 423(f). Generally speaking, termination of benefits is appropriate when, *inter alia*, there has been medical improvement related to the claimant's ability to work. 42 U.S.C. 423(f); 20 C.F.R. §§ 404.1594, 416.994.

### D. ALJ Ryan's Decision

ALJ Ryan first noted that at the time of the CPD, Plaintiff met Listing § 112.05(C) with diagnoses of mild mental retardation and affective disorder. AT 17.

The ALJ then reviewed the medical evidence and concluded that Plaintiff's asthma and "R/O reading disorder" are severe impairments. AT 18. The ALJ found that the medical evidence fails to demonstrate that either of these conditions are "severe enough" to meet or medically equal one of the listed impairments in Section 12.00 of the listed impairments. Id.

The ALJ next found that medical improvement in Plaintiff's condition occurred. AT 18. The ALJ explained that a "prudent review of the evidence actually received since the CPD determination and prior to the cessation of benefits, demonstrates that clinical and diagnostic findings support a significant improvement in the claimant's ability to engage in basic work activities." Id. The ALJ also found that the record shows that Plaintiff no longer has significant limitations in his ability to engage in basic work activities. AT 20.

Lastly, the ALJ found that Plaintiff had no past relevant work experience and that Plaintiff is capable of performing work at all exertional levels with a restriction for asthmatic irritants. AT 20-21. The ALJ consulted the Medical Vocational Guidelines, and determined that Plaintiff is not disabled, affirming the determination of the State Agency that resulted in the cessation of Plaintiff's benefits as of November 30, 2002. AT 21.

### E. Evaluation of Opinion Evidence

Plaintiff claims that the ALJ improperly discounted Dr. Specterman's opinion on the basis that Dr. Specterman saw Plaintiff on only one occasion. Dkt. No. 10 at 16-19. Defendant argues that the ALJ properly evaluated the opinion evidence. Dkt. No. 11 at 6-9.

Under the regulations, unless controlling weight is given to a treating source's opinion, the following factors must be considered when deciding the weight given to any medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; (6) any other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). The Commissioner, and not the Court, is responsible for weighing conflicting evidence. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

In his decision, the ALJ discussed several findings made by Dr. Specterman, including Plaintiff's IQ scores. AT 17. The ALJ then found that the limitations established by Dr. Specterman were of "limited value." Id. In addition to noting that Dr. Specterman saw Plaintiff on only one occasion, the ALJ pointed out that Dr. Specterman assessed Plaintiff nearly two years after the date of cessation and provided a new diagnosis of bipolar disorder. Id. The ALJ concluded that Dr. Specterman's findings are not probative of Plaintiff's RFC when disability ceased in November of 2002. Id. In light of the foregoing, the ALJ's assignment of limited value to Dr. Specterman's opinion is supported by substantial evidence.

Plaintiff also argues that the ALJ erred by failing to "mention" the findings made by Dr. Specterman in the Medical Source Statement. Dkt. No. 10 at 17; see AT 432-33. An ALJ is not required to reconcile every shred of evidence. See Jones v. Barnhart, No. CV-04-2772, 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2004) (ALJ not obligated to address specifically each piece of evidence); Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) ("[F]ailure to cite specific evidence does not indicate that it was not considered.") (citation omitted). Moreover,

the ALJ reviewed several findings made by Dr. Specterman and specifically stated that he "considered" the "evaluations and clinical findings" made by Dr. Specterman. AT 17. In light of the foregoing, the ALJ committed no error in this regard.[3]

### F.     Listed Impairment

Plaintiff also claims that his condition meets the "equivalence standard" of Listing 12.05C. Dkt. No. 10 at 19-20. Plaintiff also claims that the ALJ failed to "acknowledge" that Plaintiff's "lack of cooperation" was evidence of Plaintiff's "mental limitations." Dkt. No. 10 at 19. Defendant argues that the ALJ committed no error. Dkt. No. 11 at 9-12.

Pursuant to the third step of the five-step process, if the claimant has an "impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In cases in which the disability claim is premised upon one or more listed impairments of appendix 1, "the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982); see also Hendricks v. Commissioner of Social Security, 452 F. Supp.2d 194, 198-99 (W.D.N.Y. 2006). While a court may be able "to look to other portions of the ALJ's decision" and to "credible evidence" in finding that his determination was supported by substantial evidence, the Second Circuit has noted that "[c]ases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record . . . . In such instances, we would not hesitate to remand the case for

---

[3] Plaintiff also argues that the ALJ had a duty to develop the record regarding Plaintiff's ability to read in light of Dr. Noia's finding that a reading disorder should be ruled out. Dkt. No. 10 at 17. However, Plaintiff's counsel then admitted that Plaintiff's then-representative "pursued the needed testing." Id. Similarly, Plaintiff points out that the Agency found that Plaintiff's original IQ scores were no longer valid, but failed to administer a new test. Id. However, Plaintiff's then-representative referred Plaintiff to Dr. Specterman who evaluated Plaintiff's IQ. AT 426-31.

further findings or a clearer explanation for the decision." Id. (citations omitted).  Thus, while an ALJ is not obligated to address specifically each piece of evidence in his decision, Jones v. Barnhart, No. CV-04-2772, 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2004), he is not excused from addressing an issue central to the disposition of the claim.  See Ramos v. Barnhart, No. 02 Civ. 3127, 2003 WL 21032012, at *10 (S.D.N.Y. May 6, 2003) (citing, *inter alia*, Ferraris, 728 F.2d at 587 ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.")).

> Listing 12.05C of the listed impairments provides as follows:
>
> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

The ALJ found that the medical evidence failed to demonstrate that Plaintiff's severe impairments, asthma and "R/O reading disorder," were "severe enough" to "meet or medically equal one of the impairments listed in § 12.00." AT 18.  However, the ALJ provided no rationale supporting this finding, which was error.  See Berry, 675 F.2d at 469.  Moreover, it is unclear whether the ALJ considered Section 3.00 (Respiratory System) with regard to Plaintiff's asthma, which the ALJ found was a severe impairment.  See  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00.

For these reasons, the Court is unable to find that the ALJ's determination in this regard is supported by substantial evidence. Therefore, the matter must be remanded.[4]

### G. Medical Improvement

Plaintiff argues that there is no substantial evidence to support the ALJ's finding of medical improvement. Dkt. No. 10 at 21-22. Defendant argues that substantial evidence supports the ALJ's finding. Dkt. No. 11 at 12-13.

In order to support the termination of benefits, the Commissioner must meet a burden of showing, by substantial evidence, that a medical improvement has taken place in a claimant's ability to perform work activity. 42 U.S.C. § 423(f)(1)(A); 20 C.F.R. §§ 404.1594, 416.994. A medical improvement is defined as "any decrease in the medical severity" of an impairment. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1). Any decrease must be based upon changes in the symptoms, signs, and/or laboratory findings associated with the impairment. Id. To find medical improvement, the Commissioner must compare the prior and current medical evidence to determine whether there have been any changes in signs, symptoms, and laboratory findings associated with the claimant's impairment. 20 C.F.R. §§ 404.1594(b)(7), 404.1594(c)(1).

If there has been a medical improvement, the Commissioner must then determine whether the improvement is related to the claimant's ability to work. 20 C.F.R. §§ 404.1594(a), 416.994(b). A medical improvement will be related to the claimant's ability to work where it results in a decrease in the severity of the impairment present at the time of the most recent favorable medical decision and an increase in the claimant's functional capacity to perform basic work activities. 20 C.F.R. §§ 404.1594(b)(3), 416.994(b). Basic work activities include abilities and attributes

---

[4] Regarding Plaintiff's claim that his lack of cooperation is evidence of his adjustment disorder and limited intellectual functioning, Dkt. No. 10 at 19, Plaintiff cites no supporting medical evidence.

13

necessary to do most jobs, such as walking, standing, pushing, pulling, reaching, carrying, hearing, speaking, remembering, and using judgment. 20 C.F.R. § 404.1594(b)(4). Even where a medical improvement related to claimant's ability to work has occurred, in most cases the Commissioner must show that the claimant is able to engage in substantial gainful activity before he will be found no longer disabled. 20 C.F.R. § 404.1594(a). In examining claimant's ability to work, all impairments existing at the time of analysis must be considered. 20 C.F.R. § 404.1594(b)(5).

The ALJ stated that a "prudent review of the evidence actually received since the CPD determination and prior to the cessation of benefits, demonstrates that clinical and diagnostic findings support a significant improvement in the claimant's ability to engage in basic work activities." AT 18. The ALJ explained that there was a lack of evidence suggesting that Plaintiff was unable to understand, remember, and carry out simple job instructions, respond to supervisors, co-workers and usual work situations, deal with changes in a routine work setting and maintain attention and concentration in a job with simple tasks, "together which directly relates to an increase in the functional capacity to do basic work activities." Id. The ALJ then summarily concluded that Plaintiff's disabling conditions improved "in a manner that reached the threshold of the medical improvement standards set forth in [the Regulations]." Id.

The ALJ also apparently based his decision on a lack of psychiatric treatment between the CPD and the cessation determination. AT 16. The ALJ stated, "The only medical evidence of record between the CPD and cessation determination reveals that the claimant was neither under any psychiatric treatment nor under medical care for any mental health issues at the time of cessation of benefits on November 30, 2002." Id.

It is unclear how the information cited by the ALJ supports a finding of medical improvement. As noted, medical improvement is defined as "any decrease in the medical severity"

14

of an impairment. 20 C.F.R. § 404.1594(b)(1). Any decrease must be based upon *changes* in the symptoms, signs, and/or laboratory findings associated with the impairment. Id.

In light of the foregoing, the Court is unable to find that the ALJ's determination is based on substantial evidence. The ALJ failed to specifically cite any *changes* in the symptoms, signs, and/or laboratory findings associated with Plaintiff's impairments. Therefore, the matter must be remanded.

### H.     Vocational Expert Testimony

Plaintiff argues that the testimony of a vocational expert was required in light of his non-exertional limitations. Dkt. No. 10 at 19-21.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. §§ 404.1566(a), 416.966(a). The ALJ may apply the Medical-Vocational Guidelines ("the grids") or consult a vocational expert ("VE"). See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2. If a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate. Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986).

Because the Court is remanding for a proper determination of whether Plaintiff's conditions meet or equal a listed impairment and whether medical improvement occurred, the Court directs remand on this issue as well. Upon remand, the ALJ shall obtain the opinion of a vocational expert

if Plaintiff's nonexertional limitations present significant limitations. See Bapp, 802 F.2d at 605-06 (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits is **REVERSED** and this matter **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[5] for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED.**

DATED: September 16, 2008
Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[5] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).